OPINION
{¶ 1} Defendant-appellant, Brian A. Faught, appeals a nonparental visitation decision *Page 2 
from the Clermont County Court of Common Pleas, Domestic Relations Division. Third-party intervenors, Kay and Patton Boggs, have filed a cross-appeal to the decision. We affirm the decision of the trial court.
 {¶ 2} This matter began following opposing motions for custody filed by appellant and appellees, the children's maternal grandparents, following the death of the children's mother. The minor children in question are Jamie Kaitlyn Faught, the biological daughter of Katherine Bauman and adoptive daughter of appellant; and their biological son, Brian Alexander Faught. Appellant and Katherine Bauman divorced in February 1999. Katherine subsequently married James Bauman. Appellant and Katherine had shared parenting of the children pursuant to a shared parenting plan, wherein Katherine was the residential parent and appellant was the nonresidential parent. James and Katherine had a son born on March 4, 2005.
 {¶ 3} Katherine died on April 10, 2005. On April 11, 2005, appellant filed an emergency motion for custody. Appellees filed a motion to intervene and for custody. On June 9, 2005, adopting the decision of the magistrate, the trial court ordered Brian Alexander to reside with appellant, and Jamie Kaitlin to reside with appellees for the remainder of the 2004-2005 school year and, upon completion, reside with appellant thereafter. On August 12, 2005, the trial court designated appellant residential parent and legal custodian of both children, and granted visitation and companionship time to appellees on the first and third weekends of each month. On August 12, the trial court also appointed a guardian ad litem.
 {¶ 4} On November 23, 2005, appellant filed a motion for contempt and to suspend visitation against appellees. James Bauman filed a motion to intervene and for companionship time. On December 20, 2005, the guardian ad litem filed a motion for payment of fees. On March 3, 2006, appellant filed a motion for reimbursement of fees.
 {¶ 5} On March 16, 2006, a hearing was held on the pending motions. On June 13, *Page 3 
2006, the decision of the magistrate was filed, recommending that appellees be awarded companionship time with the children on the first and third weekends of each month through the end of 2006 and, effective January 1, 2007, companionship time on the first weekend of each month and an additional weekend each month to be arranged by appellant and appellees. Appellees were also granted one week of extended time in the summer provided that they advise appellant by May 15 each year of the week they wish to exercise. Further, the magistrate denied James Bauman's motion to intervene, but allowed appellees to arrange time, during their visitation, to have contact with James Bauman "to allow the children to have an ongoing relationship with their half-brother."
 {¶ 6} Appellant filed multiple objections to the magistrate's decision. After review, the trial court modified the decision of the magistrate. The trial court reduced appellees' companionship time, awarding visitation for only "the first weekend of every month, as opposed to two weekends per month." The trial court also required appellees to be responsible for all transportation during visitation. Finally, in regard to the extended summer visitation, the trial court ruled that appellant shall advise appellees by May 15 each year of the dates the children will be available. Appellant timely appeals, raising six assignments of error. On cross-appeal, appellees raise two cross-assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED WHEN IT: "1) SET A VISITATION SCHEDULE AGAINST THE FATHERS [sic] WISHES AS EXPRESSED TO THE COURT; 2) SET A DATE TO DETERMINE WHEN THE THIRD PARTY INTERVENERS [sic] SHALL HAVE EXTENDED TIME FOR SUMMER VISITATION; 3) ALLOWING THE GRANDPARENTS TO ARRANGE TIME WITH STEPFATHER TO HAVE CONTACT WITH THE CHILDREN; 4) GIVES REQUIREMENTS FOR THE FATHER TO PROVIDE ACTIVITY SCHEDULES."
 {¶ 9} In his first assignment of error, appellant argues that the trial court erred by *Page 4 
setting the visitation schedule, granting appellees extended summer visitation, allowing appellees to arrange time with James Bauman, and requiring appellant to provide activity schedules. In this assignment of error, appellant relies on the United States Supreme Court decision inTroxel v. Granville (2000), 530 U.S. 57, 120 S.Ct. 2054. Appellant argues the decision of the trial court violates the mandates ofTroxel. Most significantly, appellant challenges the constitutionality of Ohio's nonparental companionship and visitation statute. Appellant stresses that R.C. 3109.11 and R.C. 3109.051 are unconstitutional under the Troxel standard.
 {¶ 10} Troxel involves a similar factual situation to the case at bar. Following the father's death, the paternal grandparents sought visitation. Id. at 61. Similar to the instant matter, the mother did not oppose visitation altogether, but instead wished to limit the visitation to one day per month with no overnight stay. Id. The grandparents moved for a visitation order pursuant to the state of Washington's third-party visitation statute. Id. Under the Washington statute, "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings." Id.
 {¶ 11} In Troxel, the United States Supreme Court invalidated the Washington statute, finding that it "unconstitutionally infringes on that fundamental parental right." Id. at 67. The court held that the statute was "breathtakingly broad" because it allows "[a]ny person" to "petition the court for visitation rights at any time." (Emphasis sic.)
 {¶ 12} Appellant maintains that he has been found by the court to be a "fit parent" and has always allowed appellees to have companionship time with the children despite, on multiple occasions, appellees' failure to follow court orders and attempts to sabotage him. Appellant cites the Ohio Supreme Court's holding in In re Martin, 68 Ohio St.3d 250,1994-Ohio-506, that "grandparents have no constitutional right to association with their grandchildren." Id. at 252. Further, appellant argues the statutes place a burden on a "fit *Page 5 
parent" to demonstrate that the decisions of the "fit parent" are in the best interests of the child. Appellant argues the magistrate and trial court failed to uphold his parental rights, and "continued to support third-parties as equal entities." Appellant contends that since he is a "fit parent" the trial court erred in setting the visitation schedule and awarding extended time for summer visitation. Appellant is frustrated with the continuing court involvement and argues that the state intrusion is a violation of his parental rights.
 {¶ 13} R.C. 3109.11 sets forth "Companionship or visitation rights for parents or other relatives of deceased mother or father." The statute specifically provides, in part, "If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code."
 {¶ 14} R.C. 3109.051(D) lists 16 factors a magistrate or court must consider in determining "companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11."
 {¶ 15} In Harrold v. Collier, 107 Ohio St.3d 44, 2005-Ohio-5334, the Ohio Supreme Court examined the constitutionality of these nonparental-visitation provisions under Troxel. In Harrold, the court held that the Ohio provisions are constitutional; distinguishing the Ohio statutes from the Washington statutes at issue in Troxel, and finding that the Ohio statutes satisfy strict scrutiny. Id. at ¶ 44 and ¶ 47. *Page 6 
 {¶ 16} First, the court stated that the Ohio statutes "limit the parties who can petition the court for visitation and limit the application of the statutes to cases where there is a specified predicate event or condition." Id. at ¶ 41. Second, "R.C. 3109.11 and3109.12 expressly identify the parents' wishes and concerns regarding visitation as a factor the court must consider in making its determination." Id. at ¶ 42. "Ohio's nonparental-visitation statutes not only allow the trial court to afford parental decisions the requisite special weight, but they also allow the court to take into consideration the best interest of the child and balance that interest against the parent's desires." Id. at ¶ 43. Third, "while Troxel states that there is a presumption that fit parents act in the best interest of their children, nothing in Troxel indicates this presumption is irrefutable. The trial court's analysis of the best interests of a child need not end once a parent has articulated his or her wishes. By stating inTroxel that a trial court must accord at least some special weight to the parent's wishes, the United States Supreme Court plurality does not declare that factor to be the sole determinant of the child's best interest. Moreover, nothing in Troxel suggests that a parent's wishes should be placed before a child's best interest. The state has a compelling interest in protecting a child's best interest, * * * and Ohio's nonparental visitation statutes are narrowly tailored to serve that compelling interest." Id. at ¶ 44.
 {¶ 17} Appellant urges this court to reconsider and overrule the Ohio Supreme Court's decision in Harrold, and find the subject provisions of the revised code unconstitutional. We are required to follow and have no authority to overrule controlling Supreme Court authority. Batting v.Forshey (1982), 7 Ohio App.3d 72, 74. "It is a fundamental rule that `[decisions of a court of last resort are to be regarded as law and should be followed by inferior courts * * * until they have been reversed or overruled.'" Id., quoting Krause v. State (1972),31 Ohio St.2d 132, 148.
 {¶ 18} As a result, we must determine whether the trial court erred by setting the *Page 7 
visitation schedule, granting extended summer visitation, allowing appellees to arrange time with James Bauman, and requiring appellant to provide activity schedules.
 {¶ 19} The standard of review for visitation and domestic relations cases is abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142,144. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 20} As a preliminary matter, we note that appellant argues that the trial court erred in setting a date for appellant to determine when appellees may exercise their extended visitation time. In his objections to the magistrate appellant argued that "the Magistrate erred * * * that Grandparents shall advise Father by May 15 of each year of the week they wished to exercise extended summer time. Extended time should be scheduled by Father based on school and other family obligations." The trial court in this case sustained appellant's assignment of error, granting appellant the relief sought by giving appellant the flexibility to decide when appellees' extended summer time may be exercised. Accordingly, we find this issue to be moot.
 {¶ 21} In regard to the remaining issues, the trial court stated in its decision, "In the present case, the Court finds Defendant to be a fit and loving parent. The Court further finds that the third-party intervenors have a close relationship with the minor children. Accordingly, the Court finds that it is in the best interest of the minor children to continue to have a relationship with the third-party intervenors. The Court further finds, however, that the visitation schedule set forth by the Magistrate fails to give special weight to Defendant's wishes and concerns.
 {¶ 22} "Upon review of the totality of the evidence presented, and specifically considering Defendant's wishes and concerns, the Court finds that it is in the best interest of *Page 8 
the minor children for the third-party intervenors to be awarded visitation the first week of every month, as opposed to two weekends per month."
 {¶ 23} Further, the trial court found the contact with James Bauman to be in the best interest of the children because, as the magistrate stated, it will "allow the children to have an ongoing relationship with their half-brother." Additionally, the trial court held that it was in the best interest of the children to require appellant to provide activity schedules to appellees.
 {¶ 24} A review of the record clearly shows that the trial court did not "rubber stamp" the magistrate's decision as appellant suggests in his brief. The trial court's decision demonstrates that it considered the necessary factors in light of the facts of the case, including the best interests of the children and appellant's wishes and concerns as a parent. At the hearing, appellant testified that "two week[ends of visitation] every month is excessive." As a result the trial court modified the decision of the magistrate, awarding only one weekend per month to appellees. Further, appellant agreed that appellees should have extended visitation in the summer, but flexibility was also desired. Accordingly, as noted above, the trial court modified the magistrate's decision, allowing appellant to determine the dates the children would be available in the summer.
 {¶ 25} In regard to James Bauman, appellant was asked at the hearing:
 {¶ 26} "Q. Do you think it's important for the children to have a relationship with [their half brother]?
 {¶ 27} "A: Absolutely.
 {¶ 28} "Q: And they lived with James. Do you think its best that they continue that relationship?
 {¶ 29} "A: I think it is."
 {¶ 30} After a review of the record, we find no abuse by the trial court. Appellant's first *Page 9 
assignment of error is overruled.
 {¶ 31} Assignment of Error No. 2:
 {¶ 32} "THE TRIAL COURT ERRED WHEN IT DISMISSED THE APPELLANTS [sic] MOTION FOR CONTEMPT AND TO SUSPEND VISITATION."
 {¶ 33} Appellant argues in his second assignment of error that the trial court erred by dismissing the motion for contempt and to suspend visitation. Appellant notes that a three hour hearing was held on March 16, 2006 for the four pending motions, including the motion at issue in this assignment of error. Appellant argues, however, that the trial court did not provide enough time for him to present his case to the magistrate. Appellant further states that a continuance was not requested to the hearing because the magistrate "was very clear that the hearing would not be continued in progress and it was restricted to three hours."
 {¶ 34} Appellant's argument is unpersuasive. A review of the transcript of the March 16 proceeding demonstrates that neither appellant nor his trial counsel ever attempted to raise the issue with the magistrate. Further, appellant presented no testimony or evidence at the hearing in support of the motion. Due to the absence of any evidence or testimony, the trial court did not err in denying appellant's motion. Appellant's second assignment of error is overruled.
 {¶ 35} Assignment of Error No. 3:
 {¶ 36} "THE TRIAL COURT ERRED BY1) NOT AWARDING FATHER ATTORNEY FEES; 2) ORDERING FATHER TO PAY HALF OF ALL OUTSTANDING COURT COSTS."
 {¶ 37} Appellant argues in his third assignment of error that the trial court erred by not awarding attorney fees and ordering him to pay half of all court costs. Appellant argues that as a "fit parent," he "should not be subjected to the time and cost of defending my right to raise my children as I see fit." Further, appellant states that he is entitled to the court costs because he had to continually go to the multiple court proceedings due to appellees' *Page 10 
"continued failure to abide by the court's orders."
 {¶ 38} The decision to award attorney fees and allocation of court costs is within the sound discretion of the court. See Rand v. Rand
(1985), 18 Ohio St.3d 356; Carman v. Carman (1996), 109 Ohio App.3d 698;Hagemeyer v. Sadowski (1993), 86 Ohio App.3d 536, 567.
 {¶ 39} The magistrate stated, "The Court finds that the issues presented in this matter were not frivolous: instead, the issues had merit and the parties had a genuine disagreement about what resolution would be best for the children." The trial court held that "the Decision of the Magistrate [was] supported by the record."
 {¶ 40} After a review of the record, we find no abuse by the trial court in denying appellant's motion for attorney fees and ordering appellant to pay half of all outstanding court costs.
 {¶ 41} Appellant's third assignment of error is overruled.
 {¶ 42} Assignment of Error No. 4:
 {¶ 43} "THE TRIAL COURT ERRED BY NOT HOLDING GRANDPARENTS IN CONTEMPT OF COURT FOR THEIR FAILURE TO RETURN THE CHILDRENS [sic] PERSONAL PROPERTY."
 {¶ 44} Appellant cites the magistrate's decision of October 14, 2005 wherein the magistrate ordered appellees to return all of the children's property to appellant. Appellant cites the testimony of James Bauman during the March 16, 2006 hearing. Bauman testified that the children's beds and bedding are still in their bedrooms at his house the same as when the children lived there prior to the death of their mother. Appellant argues that the trial court erred by not holding the grandparents in contempt for their failure to return the children's property.
 {¶ 45} A review of the record reveals that appellant did not properly raise and preserve *Page 11 
the issue for appeal. Appellant maintains though that the issue was before the court because a provision was included in his "Proposed Plan for Visitation."
 {¶ 46} We disagree with appellant's argument. Appellant did not file any motion with the magistrate for contempt against appellees seeking redress for the purported failure to return the children's personal property, nor did appellant raise the issue to the magistrate at the hearing. Further, appellant did not raise the issue to the trial court in any objections to the magistrate's decision. Accordingly, the issue is not properly before this court. Appellant's fourth assignment of error is overruled.
 {¶ 47} Assignment of Error No. 5:
 {¶ 48} "THE TRIAL COURT ERRED WHEN IT APPOINTED A GUARDIAN AD LITEM AND ORDERING FATHER TO PAY HALF OF ALL FEES OVER $500."
 {¶ 49} In his fifth assignment of error, appellant argues the "trial court imposed its will on me by ordering a GAL instead of allowing me to choose with whom my children would associate." Appellant first argues that R.C. 2151.28 determines when a GAL shall be appointed and none of those situations were present in this case. In contrast, appellees argue that Clermont County Loc.R. DR 36 provides for the appointment of a GAL and the decision to appoint a GAL is within the discretion of the court. Appellant claims that Loc.R. DR 36 does not apply to the case at bar; therefore, the trial court erred in appointing the GAL and ordering him to pay fees associated with the appointment.
 {¶ 50} In the case at bar, the trial court stated, "The Defendant objects, stating that the Magistrate erred by `[g]ranting Motion to Appoint GAL.' More specifically, defendant states that `[a]s of August 12, 2005, it had been established by the Court that Father was a fit parent and as a fit parent acts and makes decisions in the best interest of the children.' Defendant's objection is not well taken as the Court finds the objections to be untimely filed."
 {¶ 51} Accordingly, we find no error by the trial court in overruling appellant's objection. *Page 12 
The order appointing the GAL in this case was filed on August 12, 2005. However, appellant did not raise any objection to the appointment of the GAL until he filed his objections to the decision of the magistrate on September 15, 2006. Appellant's fifth assignment of error is overruled.
 {¶ 52} Assignment of Error No. 6:
 {¶ 53} "THE TRIAL COURT ERRED WHEN IT ORDERED ALL PARTIES TO ATTEND THE `KIDS PROGRAM' AND MEDIATION."
 {¶ 54} In his final assignment of error, appellant argues the trial court erroneously ordered the parties to attend mediation and the "Kids Program." Appellant contends that the "Kids Program" is a mandate for a divorce situation, not the situation at bar. Further, appellant argues that he has been found to be a fit parent and appellees are the parties that continually violated court orders and undermined appellant's authority as a parent.
 {¶ 55} On June 9, 2005, the trial court ordered the parties to attend mediation. Appellant filed no objection to this order at the trial court level. As a result, appellant's assignment of error as it relates to the mediation order is without merit.
 {¶ 56} In addition, it was within the sound discretion of the trial court to require appellant to attend the "KIDS Program." The facts herein establish that attendance in the program is in the best interest of the children. Appellant's sixth assignment of error is overruled.
 {¶ 57} Cross-assignment of Error No. 1:
 {¶ 58} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLEES IN THE SCHEDULE IT ESTABLISHED FOR GRANDPARENT VISITATION WHERE THE EVIDENCE DEMONSTRATED THE CHILDREN AND GRANDPARENTS HAD DEVELOPED A CLOSE, LIFE-LONG RELATIONSHIP." *Page 13 
 {¶ 59} Cross-assignment of Error No. 2:
 {¶ 60} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLEES IN FAILING TO GRANT EXTENDED VISITATION."
 {¶ 61} In their cross-assignments of error, appellees argue the trial court erred in establishing the visitation schedule. Specifically, appellees argue that it is not in the best interest of the children to reduce the contact with their maternal grandparents by one-half. Further, appellees argue the trial court erred in refusing to grant appellees extended visitation time of four weeks per year, even though appellant gave his approval to that quantity of time.
 {¶ 62} Appellees' arguments are unpersuasive. As we determined in appellant's first assignment of error, the trial court did not abuse its discretion in determining companionship and extended visitation time. Appellees' assignments of error are overruled.
 {¶ 63} Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.