[Cite as *In re J.T.S.*, 2015-Ohio-364.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


IN RE:                                          :
                                                        CASE NO.   CA2014-09-009
    J.T.S.                                  :
                                                        O P I N I O N
                                                :        2/2/2015

                                                :

                                                :


APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20134075


Jon Paul Rion and Nicole L. Rutter-Hirth, 130 West Second Street, Suite 2150, P.O. Box 10126, Dayton, Ohio 45402, for plaintiffs-appellants

Maria L. Spencer, 120 North Commerce Street, P.O. Box 221, Lewisburg, Ohio 45338, for defendant-appellee


**M. POWELL, P.J.**

{¶ 1}   Plaintiffs-appellants, J.K. and E.K., appeal from the decision of the Preble County Court of Common Pleas, Juvenile Division, granting defendant-appellee, A.S., legal custody of J.T.S., her minor son.  For the reasons outlined below, we affirm.

{¶ 2}   Appellants met and became friends with A.S. in December 2011 or January 2012.  Several months later, in April 2012, appellants learned through mutual friends that A.S. was pregnant, but that A.S. was unsure if she wanted to keep the child, place the child

for adoption, or terminate the pregnancy. Wanting to adopt a child for several years, appellants asked A.S. if she would be willing to enter into an open adoption with them. A.S. agreed. Thereafter, with all parties initially in agreement, appellants obtained the services of a local attorney to begin the adoption process. During this time, J.K. frequented A.S.'s doctor's appointments, while E.K. began setting up a nursery in their home. A.S. and appellants also agreed upon a name for the child. A.S. never retained her own attorney and, according to appellants, appeared ready and willing to move forward with the adoption at all times.

{¶ 3} On November 12, 2012, A.S. delivered J.T.S. J.K. was present for the delivery and, with A.S.'s approval, cut the umbilical cord. J.K. was also the first to hold the child. Upon receiving A.S.'s consent, appellants then took the child home.

{¶ 4} On November 14, 2012, two days after J.T.S. was born, A.S. executed a power of attorney appointing appellants as attorney-in-fact to exercise care, physical custody, and control of the child. The power of attorney, however, was to be valid for only one year and specifically stated that it did not "affect [A.S.'s] rights in any future proceedings concerning the custody of said child or the allocation of parental rights and responsibilities for the care of the child." A.S. also executed a document entitled "Pre-Adoptive Placement of Custody," which explicitly stated A.S. had only agreed to place the child in the "temporary legal custody" of appellants. The parties did not enter into any other agreements and no adoption paperwork was ever executed or filed.

{¶ 5} Several months later, on March 22, 2013, A.S. called appellants and informed them that she had changed her mind and did not want to go forward with the adoption. Unable to come to an agreement as to the custody of the child, appellants and A.S. both filed motions in the juvenile court requesting legal custody of J.T.S. The matter ultimately proceeded to a two-day hearing, during which the juvenile court heard extensive testimony

from numerous witnesses and admitted into evidence both the power of attorney and the parties' "Pre-Adoptive Placement of Custody" agreement. The juvenile court also received a lengthy report from a guardian ad litem recommending A.S. be granted legal custody of J.T.S. As part of this report, the guardian ad litem noted the "clear and obvious bond" between A.S. and her son. The juvenile court subsequently entered its decision awarding legal custody of the child to A.S., leaving the decision whether to permit any visitation time with appellants to A.S.'s parental discretion.

{¶ 6} Appellants now appeal from the juvenile court's decision awarding legal custody of the child to A.S., as well as the juvenile court's decision regarding appellants' visitation time, raising three assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN FAILING TO CONSIDER ANY EVIDENCE OF THE UNSUITABILITY OF THE MOTHER OR THE BEST INTEREST OF THE CHILD.

{¶ 9} In their first assignment of error, appellants initially argue the juvenile court erred by failing to consider and admit any evidence regarding A.S.'s alleged parental unsuitability. Where a court is determining child custody in a custody proceeding between a parent and a nonparent, such as the case here, "the court may not award custody to the nonparent without first making a finding of parental unsuitability." *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, ¶ 46. After a simple review of the record, we find the juvenile court admitted extensive evidence regarding A.S.'s alleged parental unsuitability, that is, evidence "that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." *Morrison v. Robinson*, 12th Dist. Fayette No. CA2012-06-019, 2013-Ohio-453, ¶ 10, citing *In re Perales*, 52 Ohio St.2d 89 (1977), syllabus. Appellants' argument to the contrary is not

supported by the record.

{¶ 10} Next, appellants argue the juvenile court erred by failing to consider and admit any evidence regarding the "best interest of the child," a phrase which the juvenile court and the parties used interchangeably with "detriment to the child." The juvenile court, however, did accept evidence regarding the best interest of the child through the guardian ad litem report and recommendation, which, as noted above, referenced A.S.'s "clear and obvious bond" with her son. Moreover, even if we were to assume appellants' allegations were true, the record clearly establishes that the parties explicitly agreed not to introduce any evidence as to the best interest of the child until after the juvenile court had the opportunity to rule on A.S.'s alleged parental unsuitability.

{¶ 11} For example, during their opening statement, appellants' then trial counsel agreed that if the juvenile court found A.S. to be an unsuitable parent, only then would the juvenile court need to determine the best interests of the child, an issue "which we've sort of agreed to put off until a * * * later date depending to what the Court rules on [regarding A.S.'s alleged parental unsuitability]." In addition, when ruling on an objection during the cross-examination of a witness for appellants, the juvenile court specifically stated: "I'm going to stop you there because we agreed not to get into the best interest." Furthermore, once appellants rested, the juvenile court noted that it was going to adhere to the parties' agreement not to offer any evidence regarding the best interest of the child until "more information is secured with regard to the current issue * * * and/or Court rulings [in relation to A.S.'s alleged parental unsuitability]."

{¶ 12} We do not find any error in the juvenile court's decision not to admit any evidence regarding the best interest of the child until after it had the opportunity to rule on A.S.'s alleged parental unsuitability. The Ohio Supreme Court's opinion in *In re Perales* removes any doubt that the best interest standard in a child custody proceeding between a

parent and a nonparent applies only after a threshold determination that the child's parents are deemed unsuitable. As the Ohio Supreme Court stated in specifically addressing this issue:

> Shirley Perales' second contention is that the "best interest" test of custody provided for in R.C. 3109.04 should not have been applied in the instant cause. To the extent that R.C. 3109.04 proceedings may grant custody in the "best interest" of the child without a finding of parental unsuitability (*Boyer v. Boyer* (1976), 46 Ohio St.2d 83, 346 N.E.2d 286), Shirley Perales is correct.

*In re Perales*, 52 Ohio St.2d at 96.

{¶ 13} Moreover, as this court has stated previously, a trial court has the inherent power to manage the course of its proceedings and docket. *See Paramount Parks, Inc. v. Admiral Ins. Co.*, 12th Dist. Warren No. CA2007-05-066, 2008-Ohio-1351, ¶ 37 (reiterating that "[i] It is well-settled that a trial court has the inherent power to control its own docket and the progress of the proceedings in its court"). In turn, a trial court's decision regarding how to manage the course of its own proceedings is reversible error only if it amounts to an abuse of its discretion. *See Basha v. Ghalib*, 10th Dist. Franklin Nos. 07AP-963 and 07AP-964, 2008-Ohio-3999, ¶ 29. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *Miller v. Miller*, 12th Dist. Butler No. CA2001-06-138, 2002-Ohio-3870, ¶ 8. We find no abuse of that discretion here.

{¶ 14} Furthermore, assuming we were to find some error in how the juvenile court chose to manage the course of its own proceedings, any such error would fall under the invited error doctrine. "Under the 'invited error' doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *In re Baker*, 12th Dist. Brown Nos. CA2000-04-010 and CA2000-04-011, 2001 WL 35972, *2 (Jan. 16, 2001), quoting *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 471 (1998), citing

*State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 208 (1997). Therefore, because any error the juvenile court may have made would, at worst, be invited error on behalf of appellants, appellants' argument that the trial court erred by failing to consider and admit any evidence regarding the best interest of the child is without merit. Accordingly, having found no merit to any of the arguments advanced by appellants herein, appellants' first assignment of error is overruled.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT ERRED IN FINDING MOTHER DID NOT RELINQUISH CUSTODY OF [J.T.S.], IGNORING THE EVIDENCE THAT SHE PHYSICALLY ABANDONED THE CHILD AND CONTRACTUALLY AWARDED CUSTODY TO [APPELLANTS].

{¶ 17} In their second assignment of error, appellants argue the juvenile court erred by failing to find A.S. had relinquished custody of the child by physically abandoning him or by contractually awarding permanent custody of the child to appellants. We disagree.

{¶ 18} "The overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). In turn, "[w]here parents have surrendered only temporary custody of their children to third parties, the parents retain a paramount right to the custody of the child." *In re Guardianship of Smith*, 12th Dist. Preble No. CA2002-12-012, 2003-Ohio-4247, ¶ 10. However, when parents have given permanent custody of their children to nonparents, the Ohio Supreme Court has held that the best interest test applies in determining the child's custody. *Id.*, citing *Masitto v. Masitto*, 22 Ohio St.3d 63, 66 (1986). Whether a parent relinquishes rights to custody is a factual determination to be made by the trier of fact and should not be disturbed if supported

by some reliable, credible evidence. *In re Beireis*, 12th Dist. Clinton No. CA2003-01-001, 2004-Ohio-1506, ¶ 10, citing *Masitto v. Masitto*, 22 Ohio St.3d 63, 66 (1986).

{¶ 19} The juvenile court heard extensive testimony from a multitude of witnesses regarding the events leading up to and after the child's birth. This included, among other things, testimony that: (1) A.S. initially agreed it would be best if appellants took custody of the child; (2) that A.S. infrequently visited with the child in the months immediately following his birth; (3) and that A.S. provided no financial support to appellants after the child was placed in their custody. The juvenile court, however, also heard testimony that A.S. babysat the child on several occasions, as well as purchased a sleeper and medication for the child. There was also testimony that A.S. informed her counselor that she was uncertain of what to do with the child and that she was "not 100%" about moving forward with the adoption or allowing appellants to retain custody of her son. A.S.'s counselor also testified that she informed J.K. of A.S.'s reservations. When asked if this was true, J.K. testified that A.S.'s counselor had "said something in those words." A.S.'s teenage son, J.D., further testified that his mother was "very much against" the adoption after giving birth to the child.

{¶ 20} The juvenile court was also presented with a power of attorney entered into by the parties. As noted above, these documents appointed appellants to act as attorneys-in-fact over the child and to exercise care, physical custody, and control of him. The power of attorney, however, explicitly stated that it was only valid for one year. This document also stated that by agreeing to appoint appellants as power of attorney, it did not "affect [A.S.'s] rights in any future proceedings concerning the custody of said child or the allocation of parental rights and responsibilities for the care of the child." Similarly, the parties' "Pre-Adoptive Placement of Custody" agreement specifically stated A.S. had only agreed to place her minor son in the "temporary legal custody" of appellants.

{¶ 21} After considering this evidence, the juvenile court found A.S. did not physically

abandon the child or contractually award permanent custody to appellants. Upon carefully reviewing the facts of this case, we find reliable, credible evidence to support the trial court's decision. Simply stated, although faced with some contradictory testimony between the parties, the evidence presented at trial supports the juvenile court's factual determination that A.S. did not abandon J.T.S. or permanently relinquish her custody rights over her minor son. "This factual determination of the court is presumed correct because the trial judge is in the best position to view the witnesses and observe the demeanor, gestures and voice inflections so as to weigh the credibility of the presented testimony." *In re Guardianship of Smith*, 2003-Ohio-4247 at ¶ 11. This is because "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Reynolds v. Goll*, 75 Ohio St.3d 121, 124 (1996), quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Therefore, because there is reliable, credible evidence to support the juvenile decision, which includes, among other things, a document that explicitly states A.S. had only agreed to place her son in the "temporary legal custody" of appellants, we find the juvenile court did not err by awarding A.S. legal custody of the child. Accordingly, appellants' second assignment of error is overruled.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE TRIAL COURT ERRED IN FAILING TO GRANT [APPELLANTS] VISITATION RIGHTS, PERMITTING ALL CONTACT TO BE PURSUANT TO [A.S.'S] DISCRETION.

{¶ 24} In their third assignment of error, appellants argue the juvenile court erred by not granting them visitation time following a brief transitional period, leaving that decision solely to A.S.'s parental discretion. We again disagree.

{¶ 25} "Until codification of a nonparent's ability to seek visitation through the Ohio Revised Code, nonparents were not permitted to seek visitation rights." *In re N.C.W.*, 12th

Dist. Butler No. CA2013-12-229, 2014-Ohio-3381, ¶ 24. These statutes, however, "limit the parties who can petition the court for visitation and limit the application of the statutes to cases where there is a specified predicate event or condition." *Bauman v. Faught*, 12th Dist. Clermont Nos. CA2006-11-101 and CA2006-11-102, 2008-Ohio-166, ¶ 16, quoting *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 41. In turn, while various statutes have since been promulgated by the legislature to allow certain nonparents to seek visitation, we find none of these statutes permitting a nonparent to seek visitation apply to appellants.[1]  *See* R.C. 3109.12 (permitting grandparents and other relatives of a child born to an unwed mother to seek visitation with the child); R.C. 3109.11 (permitting grandparents and other relatives of a minor child to seek visitation with a child when the child's parent has died); R.C. 3109.051(B)(1) (permitting grandparents, relatives, or "any other person other than a parent" to seek visitation with a child involved in a divorce, dissolution of marriage, legal separation, annulment, or a child support proceeding); R.C. 3107.15(C) (permitting grandparents and other relatives of a minor to seek visitation of an adopted child). Therefore, by having no relation to the child through consanguinity or affinity, and in the absence of one of the above mentioned events, appellants do not have standing to request visitation of the child in these custody proceedings. *See generally In re K.P.R.*, 197 Ohio App.3d 193, 2011-Ohio-6114, ¶ 22-26 (12th Dist.) (finding stepfather had standing to request visitation of stepson as he was a "relative" of the child by affinity due to his status as the spouse of the child's mother upon her death).

{¶ 26} Furthermore, even if we were to find appellants had standing to request visitation, the ability to have visitation awarded to a nonparent is conditioned upon finding

---

1. We note the Ohio Supreme Court has also determined that, in exercising its jurisdiction under R.C. 2151.23(A)(2), a juvenile court may issue a temporary visitation order in a pending case for custody between a parent and nonparent where it is in the child's best interest. *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, syllabus. However, this limited holding applies only to temporary visitation while a custody action is pending, and therefore, would also not permit appellants to seek visitation of the child.

visitation with the nonparent is in the best interest of the child. There is a presumption that "fit parents act in the best interests of their children." *King v. King*, 12th Dist. Warren No. CA2006-01-009, 2006-Ohio-5985, ¶ 10, quoting *Troxel v. Granville*, 530 U.S. 57, 68, 120 S.Ct. 2054 (2000). In turn, "a fit parent's decision regarding visitation should be afforded great deference." *Baker v. Baker*, 12th Dist. Brown No. CA2002-04-008, 2003-Ohio-731, ¶ 10. We agree with the finding of the juvenile court that there is nothing in the record that would indicate A.S. was "unfit or unable to provide for the child, care for the child, or support the child." Therefore, although this presents a somewhat unique and unfortunate situation, because the record is devoid of any evidence to suggest A.S. is an unfit mother unsuitable and incapable of properly caring for her son, we find no error in the juvenile court's decision regarding visitation. "[T]here is nothing preventing a parent from terminating a relationship between a child and a non-parent who has no visitation rights." *In re Jones*, 2d Dist. Miami No. 2000 CA 56, 2002 WL 940195, *5 (May 10, 2002). Accordingly, appellants' third assignment of error is overruled.

{¶ 27} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.