[Cite as *In re A.R.*, 2016-Ohio-4919.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF: A.R.

:
      CASE NO. CA2015-08-143
:
      O P I N I O N
:
      7/11/2016
:

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2013-0345

Traci Combs-Valerio, 240 East State Street, Trenton, Ohio 45067, Guardian Ad Litem

D. Joseph Auciello, Jr., 306 South Third Street, Hamilton, Ohio 45011, for appellant

Jeremy J. Evans, 306 South Third Street, Hamilton, Ohio 45011, for appellees, L.B. and T.B.

Carold Garner Stark, 9435 Waterstone Boulevard, Suite 140, Cincinnati, Ohio 45249, for A.M.

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

      **M. POWELL, P.J.**

      {¶ 1}   Appellant ("Father") appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of his daughter, A.R., to the child's maternal grandparents (collectively referred to as "Grandparents" and individually as "Grandfather" and "Grandmother").

{¶ 2} A.R. was born in January 2013. At the time, Father and Mother lived together. On June 19, 2013, the Butler County Department of Job and Family Services, Children Services Division, filed a complaint alleging that A.R., then five months old, was a neglected and dependent child, due to the unsafe and unsanitary conditions of the family home. The complaint also alleged that Father and Mother both reported suffering from bipolar disorder, severe anxiety, depression, and Attention Deficit Hyperactivity Disorder ("ADHD"). By emergency ex parte order, the juvenile court granted temporary custody of A.R. to Grandparents. Shortly thereafter, Father and Mother separated.

{¶ 3} On July 23, 2013, by stipulation of the parties, A.R. was adjudicated a dependent child. A case plan was developed for both Father and Mother. Pursuant to their respective case plan, Father and Mother were both required to engage in mental health services, successfully pass random drug screens, maintain a safe and stable home, obtain stable income, and complete an in-home parenting program. Father was also required to participate in an anger management program "to address his issues with anger and responses to stressful situations."

{¶ 4} Father initially refused to participate in case plan services and he was removed from the case plan. He subsequently changed his mind and agreed to participate in case plan services; a new case plan was developed. Once again, Father was required to engage in mental health services, successfully pass random drug screens, maintain a safe and stable home, obtain stable income, and complete an in-home parenting program. Father was also required to "continue to employ anger management strategies and skills acquired from the completion of his anger management program." Father was granted supervised visitation with A.R.

{¶ 5} On November 17, 2014, Grandparents moved for legal custody of A.R. In addition, Father and Mother each individually moved for legal custody of A.R. A custody

hearing was held before a magistrate in April 2015. The child's Court Appointed Special Advocate recommended that A.R. be placed in the legal custody of Father. The child's attorney/guardian ad litem recommended a shared custody arrangement between Father and Grandmother. Mother opposed Father's motion for legal custody and asked that legal custody of A.R. be placed with Grandmother. Father opposed Grandparents' motion for legal custody and testified he wanted legal custody of A.R. Grandmother testified she wanted legal custody of A.R. with unsupervised and overnight visitation for Mother and supervised, day visitation only for Father.

{¶ 6} Throughout the proceedings, A.R. remained in the temporary custody of Grandparents. While Father was initially granted supervised visitation with A.R. once a week for two hours, it eventually progressed to one weekly overnight visit and one weekly unsupervised day-long visit.

{¶ 7} On June 9, 2015, the magistrate issued a decision awarding legal custody of A.R. to Grandparents and granting visitation to Father and Mother. The magistrate found it was in the best interest of A.R. to be placed in the legal custody of Grandparents as follows:

> This magistrate has several concerns about the future for [A.R.]. The first concern is about the behavior of the adults in this case, in particular Father and Maternal Grandmother. * * * Although Father claims that he completed an anger management program early in this case, it is clear he has much further to go in order to control his anger and aggression. This magistrate finds it difficult to square the description of Father as a loving and nurturing parent to his young daughter with the behavior Father exhibited in the courtroom and in the lobby of the court building. However, that is not to say that Father is the only one at fault on this issue. Maternal Grandmother wants to be in control over everything related to [A.R.], and does not believe that Father is capable to properly care for [A.R.]. This results in a lack of trust in Father and an inability to cooperate with him in regard to any parenting issue. * * *
>
> * * *
>
> No mental health provider reports were submitted for any of the

parties. Mother, Father and Maternal Grandmother are all currently engaged in treatment for mental health issues, yet apparently no one thought it was important for the court to know the current status of treatment. Of particular importance was information from Father's service providers. Father testified that he had several mental health diagnoses, but that he was no longer taking medications that had earlier been prescribed for him and that this was with his doctor's knowledge. * * *

Also of concern is Father's lengthy criminal history. Most of his criminal history involves crimes against property. However these are crimes of violence, and they include at least one conviction for domestic violence – a crime of violence against a household member.

This magistrate is also concerned about the financial stability of the parties. Mother and Father have limited income through disability benefits. Father's income is supplemented by the part-time income and child support received by his paramour[.] However, there are already three children in their home: two are [the paramour's] from previous relationships, and one is the child she has with [Father]. If [A.R.] is added to the household, there would be four children and two adults in the home. It is unlikely that Mother would have the ability to pay child support to Father for [A.R.].

Maternal Grandparents also had limited income until recently when the Maternal Grandfather was able to find a full time job with benefits. It therefore appears that the Maternal Grandparents are the most stable regarding income and housing.

{¶ 8} Father filed an objection to the magistrate's decision, arguing the decision to grant legal custody of A.R. to Grandparents was against the manifest weight of the evidence. On July 29, 2015, the juvenile court overruled Father's objection and affirmed and adopted the magistrate's decision granting legal custody of A.R. to Grandparents.

{¶ 9} Father appeals, raising two assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED BY FINDING CLEAR AND CONVINCING EVIDENCE TO SUPPORT LEGAL CUSTODY TO MATERNAL GRANDPARENTS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

- 4 -

{¶ 12} Father argues that the juvenile court's decision granting legal custody of A.R. to Grandparents is against the manifest weight of the evidence given the fact Father successfully completed all of his case plan services.

{¶ 13} R.C. 2151.353(A)(3) provides that if a child is adjudicated a dependent child, the court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" A juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶13. "Legal custody vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact. * * * Unlike permanent custody, granting legal custody does not terminate the parent-child relationship." *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7; R.C. 2151.011(B)(19).

{¶ 14} A juvenile court's custody determination under R.C. 2151.353 must be based on the best interest of the child. *In re C.A.* at ¶ 14. In order to determine the best interest of the child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors, including, but not limited to, any applicable factors set forth in R.C. 3109.04(F). *Id.*

{¶ 15} An appellate court reviews a juvenile court's custody determination for an abuse of discretion. *Id* at ¶ 15. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re C.A.* at ¶ 15. Thus, an appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility. *Id.*

{¶ 16} Moreover, as it relates to a manifest weight of the evidence challenge, "a

reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re X.B.*, 12th Dist. Butler No. CA2014-07-168, 2015-Ohio-1174, ¶ 21. In making this determination, an appellate court is guided by the presumption that the trial court's findings were correct. *Id.* Thus, where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. *Id.*

{¶ 17} It is undisputed Father completed the requirements of his case plan. Father is engaged in mental health services and attends individual counseling and therapy on a weekly basis. Father lives in a home with his girlfriend, her two daughters, and the son he and his girlfriend have together. Father has a stable, albeit limited, income through disability benefits. With regard to the in-home parenting program, Father not only completed the core lessons of the program, he also requested and successfully completed additional classes. The record indicates Father completed an anger management program by early 2014.

{¶ 18} However, a parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification, as the case plan is simply a means to a goal, but not the goal itself. *In re K.B.*, 12th Dist. Butler No. CA2012-03-063, 2013-Ohio-858, ¶ 25; *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, ¶ 25 (8th Dist.). Thus, the successful completion of case plan requirements does not automatically preclude a grant of legal custody to a nonparent. *See In re K.B.*

{¶ 19} In the case at bar, the juvenile court granted legal custody of A.R. to Grandparents because of its concerns over Father's financial stability, his lengthy criminal history, his mental health treatment or lack of, and the strained and "extremely problematic" relationship between Father and Grandmother. The record supports the juvenile court's

concerns.

{¶ 20} With regard to Father's financial stability, the record shows that Father has a stable but limited income through disability benefits. He is no longer eligible to receive food stamps following his 2013 conviction for attempted illegal use of food stamps. Father also owes over $4,000 in fines which he is paying back at a rate of $30 a month. Father's income is supplemented by the income his girlfriend earns as a part-time fast-food employee and the child support she receives for her two children. Their combined income supports a household of two adults and three children, not including A.R. While Grandmother is unemployed, Grandfather has now a full time job with benefits. Grandparents' income supports a household of two adults and two children, including A.R.

{¶ 21} With regard to Father's mental health treatment, Father reported he was diagnosed with bipolar disorder, severe anxiety, depression, and ADHD. Father testified he attends individual counseling and therapy on a weekly basis but refused to answer any other questions regarding his counseling and therapy. Father also testified he used to take a medication for his ADHD but stopped taking it a year before the custody hearing, purportedly with his doctor's knowledge. However, no mental health provider reports were submitted on Father's behalf.

{¶ 22} Father's lengthy criminal history dates back to 2005 and includes several convictions for theft, obstruction of official business, and drug abuse, and one conviction for breaking and entering. Father's criminal record also includes a 2013 conviction for domestic violence in violation of R.C. 2919.25(C), a crime of violence against a family or household member. The record does not indicate the identity of the victim. The record also shows that Mother obtained a five-year civil protection order against Father in 2013.

{¶ 23} While Father completed an anger management program early in the case, he seemingly gained little insight from it and has much further to go in order to control his anger

and aggression. In her May 2015 report, the guardian ad litem indicated that "Father's anger is an issue. When Father doesn't agree with someone[,] he is loud, verbally abusive, and unable to control himself. Father has acted in this manner in the presence of his daughter, within the boundaries of the courtroom and in the courthouse. This is not acceptable behavior." The report further states, "On numerous occasions, this GAL, the Court, the parties and other people have witnessed Father's temper. Father has been out of order while in the courtroom, has raised his voice in the lobby and has been threatened to be charged with disorderly conduct at a recent outburst in the Courthouse."

{¶ 24} Indeed, the record shows that during a hearing in August 2014, the magistrate asked Father to leave the courtroom following an outburst by Father. Similarly, while in the courthouse lobby during the custody hearing, Father got into an argument with the guardian ad litem and became so loud that a deputy "had to leave the security desk and come over [to] settle him down." The record also shows that on several occasions during the custody hearing, Father either interrupted or interjected himself into the testimony of a witness, and was accordingly admonished by his counsel and/or the magistrate.

{¶ 25} The relationship between Father and Grandmother is strained and "extremely problematic." The record shows that Grandmother wants to be in control of every aspect of A.R.'s life, does not believe Father can meet A.R.'s needs, and is therefore hypercritical of Father and overly protective of A.R. Grandmother's attitude is apparent to Father who, in turn, reacts with anger and aggressive behavior toward Grandmother. Unfortunately, the anger, arguing, bickering, and confrontation between Father and Grandmother often occurs in the presence of A.R.

{¶ 26} Father's love and desire to parent A.R. is apparent. Nonetheless, upon thoroughly reviewing the record, we find no abuse of discretion by the juvenile court in granting legal custody of A.R. to Grandparents rather than to Father. Because the juvenile

court had the opportunity to observe the witnesses' demeanor and characteristics, it has the better ability to evaluate witness credibility and to determine which persons are best suited to care for the child. *In re McCain*, 4th Dist. Vinton No. 06CA654, 2007-Ohio-1429, ¶ 16. "[D]eferring to the trial court on matters of credibility is 'crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well.'" *Id.* at ¶ 8, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶ 27} Leaving A.R. in the care of Grandparents, where she has thrived, minimizes the disruption to the child and allows her to maintain the strong bond she has forged with Grandparents for the last two years, while also allowing her to maintain the bond she has with Father. As noted earlier, a grant of legal custody does not terminate the parent-child relationship. *In re M.M.*, 2011-Ohio-3913 at ¶ 7. In the present case, Father's parental rights were not terminated. He has retained residual parental rights and responsibilities with A.R., including contact and visitation.

{¶ 28} Father's first assignment of error is accordingly overruled.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT ERRED BY FINDING THE BEST INTEREST FACTORS IN O.R.C. 3109.04(F) SUPPORT LEGAL CUSTODY TO MATERNAL GRANDPARENTS.

{¶ 31} Father argues the juvenile court abused its discretion by granting legal custody of A.R. to Grandparents as it was not in the child's best interest. Father, however, did not raise this issue in his objection to the magistrate's decision.

{¶ 32} Objections to a magistrate's decision must be "specific and state with particularity all grounds for objection." Juv.R. 40(D)(3)(b)(ii). The failure to file specific objections is treated the same as the failure to file any objections. *In re L.K.*, 12th Dist. Butler No. CA2014-06-145, 2015-Ohio-1091, ¶ 16. Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any

factual finding or legal conclusion * * * unless the party has objected to that finding as required by Juv.R. 40(D)(3)(b)." This court has previously ruled that "unless the appellant argues a 'claim of plain error,' the appellant has waived the claimed errors not objected to below." *In re L.K.* at ¶ 16; *In re K.P.R.*, 197 Ohio App.3d 193, 2011-Ohio-6114, ¶ 10 (12th Dist.).

{¶ 33} Here, although Father filed an objection to the magistrate's decision, he did not raise the issue that granting legal custody of A.R. to Grandparents was not in the child's best interest. Further, Father does not argue a claim of plain error in his brief. He is therefore precluded from raising this issue on appeal. *See In re L.K.* at ¶ 17; *In re T.J.W.*, 7th Dist. Jefferson Nos. 13 JE 12 thru 13 JE 14, 2014-Ohio-4419.

{¶ 34} Father's second assignment of error is accordingly overruled.

{¶ 35} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.