[Cite as *In re C.L.H.*, 2017-Ohio-2925.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF: C.L.H.        :

       :      CASE NO. CA2016-11-217

       :      O P I N I O N
            5/22/2017
       :

       :

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2014-0366

Jonathan W. Ford, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, Guardian Ad Litem

Dawn S. Garrett, 9435 Waterstone Boulevard, Suite 140, Cincinnati, Ohio 45249, for Appellant A.H.

Robert J. Qucsai, III, 20 High Street, Suite 108, Hamilton, Ohio 45011, for C.W.

Michael T. Gmoser, Butler County Prosecuting Attorney, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for Butler County Department of Job and Family Services

**S. POWELL, J.**

{¶ 1} Appellant, A.H., the mother of C.L.H. ("Mother"), appeals from the decision of

the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of her

daughter to J.H., the child's paternal cousin and then temporary custodian ("Cousin"), as

opposed to either her or to D.B.B., the child's maternal grandmother ("Grandmother"). For

the reasons outlined below, we affirm.

{¶ 2} The child at issue, C.L.H., was born on February 4, 2014. Several months after her birth, on September 19, 2014, Butler County Department of Job and Family Services ("BCDJFS") filed a complaint alleging C.L.H. was a neglected and dependent child. The complaint was filed after C.L.H.'s father, C.W. ("Father"), left C.L.H. with a family member claiming he was not able to properly care for the child. At this time, C.L.H. was suffering from a double ear infection and had a severe diaper rash. The complaint further alleged that "[Father] was in another county with a 16 year old runaway and [Mother] is using heroin and has not been caring for [C.L.H.]." It is undisputed that at the time the complaint was filed, Mother was in jail and Father's whereabouts were unknown. C.L.H. was then placed in the temporary custody of BCDJFS and appointed a guardian ad litem.

{¶ 3} On December 18, 2014, BCDJFS filed a motion requesting the juvenile court to grant temporary custody of C.L.H. to Cousin. The guardian ad litem agreed that such placement would be in C.L.H.'s best interest. The juvenile court subsequently granted BCDJFS's motion and placed C.L.H. in the temporary custody of Cousin. It is undisputed that C.L.H. has remained in the temporary custody of Cousin ever since.

{¶ 4} On January 23, 2015, C.L.H. was adjudicated a neglected and dependent child. While Father attended the adjudication hearing, Mother did not. The juvenile court then held a disposition hearing and a case plan was established. Just as with the adjudication hearing, Father attended this hearing, whereas Mother did not. As part of its entry issued following this hearing, the juvenile court stated that "[i]n the event [Grandmother] contacts BCDJFS requesting custody of this child, the BCDJFS shall conduct a home study on [Grandmother]." It is undisputed that Grandmother thereafter contacted BCDJFS and the home study of Grandmother's home was approved.

{¶ 5} On May 1, 2015, already having legal custody of Mother's two other children,

- 2 -

Grandmother filed a motion requesting legal custody of C.L.H. The matter was then scheduled for a review hearing on July 28, 2015. Following this hearing, the juvenile court ordered new counsel be appointed for Father. All other prior orders were continued.

{¶ 6} On September 22, 2015, the juvenile court held another review hearing. Following this hearing, both Grandmother and Cousin were joined as parties to the action. As before, all other prior orders were continued.

{¶ 7} On December 2, 2015, Father filed a motion requesting the juvenile court award legal custody of C.L.H. to Cousin. Approximately three weeks later, on December 21, 2015, the juvenile court held yet another review hearing. However, because counsel for Father did not appear, all prior orders were again continued. The record further indicates that new counsel was also appointed for Mother after her former counsel was forced to withdraw.

{¶ 8} On June 21, 2016, following still another review hearing, a legal custody hearing was held before a juvenile court magistrate on the parties' competing legal custody motions. At this hearing, the magistrate heard testimony from Mother, Father, Cousin, and Grandmother, among others. It is undisputed that at no time during this hearing did Mother or Grandmother object to the delay in conducting a hearing on Grandmother's motion for legal custody. It is also undisputed that Grandmother, who appeared pro se, did not present any evidence in support of her motion for legal custody. Following this hearing, on June 27, 2016, the magistrate issued a decision granting legal custody of C.L.H. to Cousin upon finding such placement was in the child's best interest.

{¶ 9} On July 6, 2016, Mother filed an objection to the magistrate's decision alleging it was not in C.L.H.'s best interest to grant legal custody to Cousin, as opposed to either her or Grandmother. Mother also alleged that the magistrate's decision was against the manifest weight of the evidence since Grandmother "was willing and able to take custody of the child." Grandmother did not file any objection to the magistrate's decision.

{¶ 10} After holding a hearing on the matter, on November 7, 2016, the juvenile court overruled Mother's objection to the magistrate's decision and issued an entry affirming and adopting the magistrate's decision in its entirety. Just as with the hearing on the parties' respective legal custody motions, it is undisputed that at no time during this hearing did Mother object to the delay in conducting a hearing on Grandmother's motion for legal custody. Grandmother did not attend this hearing.

{¶ 11} Mother now appeals from the juvenile court's decision granting legal custody of C.L.H. to Cousin, raising two assignments of error for review. For ease of discussion, Mother's two assignments of error will be addressed together.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE COURT PREJUDICIALLY ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO HEAR MATERNAL GRANDMOTHER'S MOTION FOR LEGAL CUSTODY FILED MAY 1, 2015 UNTIL JUNE 21, 2016 AND FAILED TO PLACE THE CHILD WITH MATERNAL GRANDMOTHER AND THE CHILD'S OTHER SIBLINGS.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE COURT'S CUSTODY ORDER IS NOT IN THE CHILD'S BEST INTERESTS AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} In her two assignments of error, Mother challenges the juvenile court's decision granting legal custody of C.L.H. to Cousin. In support, Mother raises two issues she believes constitute reversible error, which we address more fully below.

**Hearing on Grandmother's Motion for Legal Custody**

{¶ 17} Mother initially argues the trial court erred by not holding a hearing on Grandmother's motion for legal custody immediately after it was filed, opting instead to hold a single hearing to address the parties' competing legal custody motions. According to Mother, by not holding a hearing on Grandmother's motion sooner, C.L.H. was able to develop a

bond with Cousin, thus hindering Grandmother's chance to obtain legal custody of C.L.H.  As Mother states, because Grandmother's motion "did not come up for trial until nearly a year later * * *, the child was bonded to [Cousin] which weighed heavily in her favor at trial."

{¶ 18}  While this presents a novel argument, the record is clear that neither Mother nor Grandmother ever raised this issue at the legal custody hearing before the juvenile court magistrate, nor did Mother raise this issue as part of her objection to the magistrate's decision.  Mother also did not raise this issue to the juvenile court during the hearing held on Mother's objection to the magistrate's decision.  As this court has stated previously, under such circumstances, "unless the appellant argues a 'claim of plain error,' the appellant has waived the claimed errors not objected to below."  *In re K.P.R.*, 197 Ohio App.3d 193, 2011-Ohio-6114, ¶ 10 (12th Dist.).  Mother did not argue a claim of plain error as part of her appellate brief.  Therefore, while it is generally well-established that a juvenile court has the inherent power to manage the course of its proceedings and docket, Mother is nevertheless precluded from raising this issue on appeal.  *In re A.R.*, 12th Dist. Butler No. CA2015-08-143, 2016-Ohio-4919, ¶ 33.

### Legal Custody and Determination of C.L.H.'s Best Interest

{¶ 19}  Next, Mother argues the juvenile court's decision to grant legal custody of C.L.H. to Cousin, as opposed to either her or Grandmother, was not in C.L.H.'s best interest and was otherwise against the manifest weight of the evidence.  We disagree.

{¶ 20}  Pursuant to R.C. 2151.353(A)(3), if a child is adjudicated an abused, neglected, or dependent child, the juvenile court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]"  Legal custody vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact."  *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7.  Therefore, unlike permanent

custody, granting legal custody does not terminate the parent-child relationship. *In re A.R.*, 2016-Ohio-4919 at ¶ 13.

{¶ 21} A juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶13. In order to determine the best interest of the child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors, including, but not limited to, any applicable factors provided in R.C. 3109.04(F). *In re L.T.*, 12th Dist. Butler Nos. CA2016-03-048 and CA2016-03-058, 2016-Ohio-5272, ¶ 60. These factors include, but are not limited to: (1) the wishes of the child's parents regarding the child's care; (2) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (3) the child's adjustment to the child's home, school, and community; and, (4) the mental and physical health of all persons involved. R.C. 3109.04(F)(1)(a), (c), (d), and (e).

{¶ 22} The juvenile court enjoys broad discretion in custody proceedings. *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16. As a result, the standard of review in custody decisions is whether the juvenile court abused its discretion. *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 14. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion that a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re C.A.* at ¶ 15. Therefore, when applying the abuse of discretion standard, a reviewing court must not substitute its judgment for that of the juvenile court. *Morrison v. Robinson*, 12th Dist. Fayette No. CA2012-06-019, 2013-Ohio-453, ¶ 26.

{¶ 23} As it relates to a manifest weight of the evidence challenge, this court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. In turn, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21. Thus, "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *In re T.M.*, 12th Dist. Butler No. CA2007-01-019, 2007-Ohio-6034, ¶ 28, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶ 24} After reviewing the record, we find the juvenile court did not abuse its discretion in granting legal custody of C.L.H. to Cousin, nor do we find the juvenile court's decision was against the manifest weight of the evidence. As the record reveals, C.L.H., who at the time of the legal custody hearing was approximately two and one-half years old, had spent much of her young life in the temporary custody of Cousin. During this time, Cousin, who is not employed outside of the home, has provided C.L.H. with a safe and stable home where she resides with her husband, their 15-year-old son, and her mother. As the juvenile court found, C.L.H. and Cousin are closely bonded to the point where C.L.H. refers to her as "Mom," often "clings" to her, and seeks her out for comfort and care. The juvenile court further found that C.L.H. is well-settled into Cousin's home and with Cousin's family. According to the juvenile

court, Cousin "has done a good job of providing the love and stability that this child needs."

{¶ 25} On the other hand, while it is clear that both Mother and Grandmother have a strong, loving relationship with C.L.H., there are nevertheless concerns regarding both. For instance, the record indicates Mother has a history of substance abuse and mental health issues. The record also indicates Mother has encountered periods of unemployment, although currently working at a fast food restaurant. The record further indicates that Mother's current live-in boyfriend was formerly a registered sex offender resulting from his adjudication as a delinquent child on an offense of attempted gross sexual imposition involving a victim who was 12 years old. As the juvenile court stated, and with which we agree, Mother's relationship with her boyfriend and her desire to foster a relationship between C.L.H. and her boyfriend is "of great concern." Finally, as it relates to Grandmother, the record indicates Grandmother had previously been convicted of misdemeanor child endangering, although many years ago, and did, at one point, allow Mother's boyfriend to have contact with C.L.H. even though she had been specifically told by BCDJFS that he was not permitted to have any contact with her.

{¶ 26} Father moved the juvenile court to award legal custody of C.L.H. to Cousin, believing it to be in the best interest of his daughter. The guardian ad litem also recommended that it would be in C.L.H.'s best interest if Cousin be granted legal custody. We agree. Therefore, while Mother believes it would be in C.L.H.'s best interest if legal custody was awarded to either her or Grandmother, we find the evidence presented establishes that granting Cousin legal custody of C.L.H. was in the child's best interest. This does not mean that C.L.H. will be completely cut off from Mother and Grandmother as Mother seems to suggest. Rather, as the juvenile court specifically ordered as part of its entry, the parties are to continue "liberal companionship time" between C.L.H. and Grandmother so that C.L.H. could further develop a bond between her and her two siblings in

Grandmother's custody. Accordingly, having found no abuse of discretion in the juvenile court's decision awarding Cousin legal custody of C.L.H., and concluding the juvenile court's decision was not against the manifest weight of the evidence, Mother's first and second assignments of error are without merit and overruled.

{¶ 27} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.