[Cite as *In re J.A.*, 2017-Ohio-5848.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |  |
|---|---|---|---|
| IN THE MATTER OF: | : |  |  |
| J.A. | : | CASE NO. | CA2016-09-175 |
|  | : | O P I N I O N |  |
|  |  | 7/17/2017 |  |
|  | : |  |  |
|  | : |  |  |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2013-0382

Adolf Olivas, Lisa Lee, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, Guardian Ad Litem

Scott N. Blauvelt, 315 South Monument Avenue, Hamilton, Ohio 45011, for appellants

Lorraine Search, 215 South Sutphin Street, Middletown, Ohio 45044, for appellee, J.C.

Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Department of Job and Family Services

**RINGLAND, J.**

{¶ 1} Appellants, J.A.'s former foster parents, appeal the decision of the Butler County Common Pleas Court, Juvenile Division, granting legal custody of J.A. to the child's paternal aunt ("Aunt"). For the reasons detailed below, we affirm.

{¶ 2} J.A. tested positive for marijuana at birth on June 21, 2013. Three weeks later,

J.A., her older sisters (R.C. and J.C.), and her half-brother were removed from Mother's care. When police arrived to transport the children, J.A. was found alone in Mother's barely-furnished apartment with a full diaper. Mother has a history of abuse and neglect reports for using drugs during pregnancies and for her serious mental health issues.

{¶ 3} The same day the children were removed, J.A. was placed with appellants. J.A.'s siblings were placed in separate foster homes. On July 15, 2013, Butler County Department of Job and Family Services ("BCDJFS") filed a complaint alleging that J.A. was a neglected and dependent child and temporary custody was granted to BCDJFS. Subsequently, BCDJFS withdrew the neglect allegation and J.A. was adjudicated a dependent child. A case plan was adopted with a goal of reunification between J.A. and her biological parents.

{¶ 4} R.C. and J.C. were later placed with Aunt, who became their legal guardian. J.A., however, remained in foster care with appellants.

{¶ 5} On October 9, 2014, BCDJFS moved for permanent custody of J.A. Four days later, Father moved for legal custody to be granted in favor of Aunt. On December 19, 2014, BCDJFS also agreed and petitioned the court to grant temporary custody in favor of Aunt. Appellants filed a competing motion for legal custody of J.A.

{¶ 6} On January 13, 2015, BCDJFS withdrew the previous motion for permanent custody. On February 24, 2015, Aunt was granted temporary custody of J.A., but the court ordered visitation with appellants on alternating weekends.

{¶ 7} A legal custody hearing was held before a juvenile court magistrate on the parties' competing legal custody motions. At this hearing, the magistrate heard testimony from a number of witnesses, including Aunt, appellants, J.A.'s father, the guardian ad litem, multiple BCDJFS case workers, friends from both families, the director of J.A.'s daycare, and a forensic psychologist who conducted a bonding assessment.

{¶ 8} Following this hearing, the magistrate issued a decision granting legal custody of J.A. to Aunt upon finding that the placement was in the child's best interest. Appellants objected to the magistrate's decision and an objection hearing was held. The juvenile court subsequently overruled appellants' objections and adopted the magistrate's decision. Appellants now appeal the decision of the juvenile court, raising two assignments of error for review.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY OF J.A. TO [AUNT] AND IN DENYING APPELLANTS' LEGAL CUSTODY MOTION WHERE THAT DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} In their first assignment of error, appellants argue the juvenile court erred by granting legal custody of J.A. to Aunt. We disagree.

{¶ 12} Pursuant to R.C. 2151.353(A)(3), if a child is adjudicated an abused, neglected, or dependent child, the juvenile court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" "Legal custody vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact." *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7. Unlike permanent custody, granting legal custody does not terminate the parent-child relationship. *Id.*

{¶ 13} A juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 13. In order to determine the best interest of the child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors, including, but not limited to, any applicable factors

provided in R.C. 3109.04(F). *In re K.B.*, 12th Dist. Butler No. CA2012-03-063, 2013-Ohio-858, ¶ 11. These factors include, but are not limited to: (1) the wishes of the child's parents regarding the child's care; (2) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (3) the child's adjustment to the child's home, school, and community; and, (4) the mental and physical health of all persons involved. R.C. 3109.04(F)(1)(a), (c), (d), and (e).

{¶ 14} An appellate court reviews a juvenile court's custody determination for an abuse of discretion. *In re M.A.*, 12th Dist. Butler No. CA2011-02-030, 2012-Ohio-545, ¶ 19. An abuse of discretion implies that the juvenile court's attitude was unreasonable, arbitrary, or unconscionable. *Id.* The discretion that a juvenile court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re C.L.H.*, 12th Dist. Butler No. CA2016-11-217, 2017-Ohio-2925, ¶ 22. A reviewing court must not substitute its judgment for that of the juvenile court. *Id.*

{¶ 15} On the other hand, a manifest weight challenge concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *In re C.A.* at ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. In addressing a manifest weight challenge "a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* However, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *In re C.L.H.* at ¶ 23. Where an award of custody is supported by a substantial amount of credible and competent

evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. *Id.*

{¶ 16} This is a difficult case because J.A. clearly has the support and affection of people who have raised and nurtured her from such a young age. However, after reviewing the record, we find the juvenile court did not abuse its discretion in granting legal custody of J.A. to Aunt, nor do we find the juvenile court's decision was against the manifest weight of the evidence.

{¶ 17} The juvenile court considered the first factor regarding the wishes of the parents. Father requested that J.A. be placed with Aunt. Father testified that Aunt would be the best possible placement because Aunt is strong, independent, educated, and a successful single parent. Father also expressed his desire to have J.A. raised with her siblings and raised in a way that respects her cultural heritage. J.A. was not able to give testimony on this issue due to her young age.

{¶ 18} As to the second factor, the record is very clear that appellants and J.A. share a strong bond. J.A. was placed with appellants at an extremely early developmental time and was well-cared for and loved. J.A. refers to appellants as "Mommy" or "Momma."

{¶ 19} However, there is also a bond between Aunt and J.A. The record shows that J.A. has resided mainly in Aunt's home for the past year and has made a successful transition. While Aunt is a single mother who has a job and competing priorities, the evidence shows that Aunt has been able to maintain an appropriate life balance and has provided J.A. with competent daycare and babysitters for the time when she must be at work. J.A. is also well-cared for and loved by Aunt. In addition, with Aunt, J.A. is able to have relationships with her siblings. The placement also allows Father to visit J.A. in a supervised setting and the two may be able to maintain a relationship.

{¶ 20} Regarding the third factor, the juvenile court found that J.A. is well-adjusted to

both homes. As noted above, Aunt does work and therefore there is time when J.A. is in daycare or with a babysitter. J.A. is adjusted to the daycare and her teacher, and her siblings also attend the same daycare. A bonding assessment generated no issues with the daycare, and indicated that it could be positive to have early enriched childhood learning and social structure.

{¶ 21} As to the fourth factor, the juvenile court noted that Mother has substance abuse and mental health issues. Mother has failed to attend treatment for those issues despite the fact that her mental health issues appear to be of significant concern. Although Father completed substance abuse treatment and has stopped smoking marijuana, he plainly admitted that the only reason he stopped using marijuana was for custody of the children. The record supports a finding that neither biological parent is currently fit to care for J.A.

{¶ 22} Those concerns, however, are not present for Aunt. Aunt maintains steady and stable employment. She has stepped up as a responsible person in the care of the children. The evidence shows that Aunt is a hard-working individual who is able to provide for the family.

{¶ 23} We also note that appellants are stable and responsible individuals who could provide for J.A. There are no concerns with appellants in terms of fitness or ability to care for J.A., but our review is limited to whether the juvenile court's decision was an abuse of discretion or against the manifest weight of the evidence.

{¶ 24} After a thorough review of the record, we cannot say that the juvenile court abused its discretion by balancing the factors as it did. Though the GAL did recommend that legal custody be granted to appellants, the court is "not bound to follow a guardian ad litem's recommendation." *Gibson v. Gibson*, 12th Dist. Clinton No. CA2016-01-002, 2016-Ohio-4996, ¶ 19. As stated by the magistrate, "[t]his is, admittedly, a very difficult and close case." The magistrate found that both Aunt and appellants "appear to be capable, intelligent, caring,

and loving women when it comes to [J.A.]." While appellants claim that the juvenile court placed too much weight on the blood relationship factor, we disagree as the juvenile court's decision was fully explained in the decision. Placement with Aunt will minimize disruption to J.A. and allow her to maintain a bonded relationship with her siblings and her biological family. While this is a difficult case, the facts support the juvenile court's decision and there was no abuse of discretion. Appellants' first assignment of error is without merit and overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT ERRED IN DENYING APPELLANTS VISITATION OR COMPANIONSHIP WITH J.A.

{¶ 27} In their second assignment of error, appellants argue the juvenile court erred by not granting visitation time to them. We find appellants' argument is without merit.

{¶ 28} "Until codification of a nonparent's ability to seek visitation through the Ohio Revised Code, nonparents were not permitted to seek visitation rights." *In re N.C.W.*, 12th Dist. Butler No. CA2013-12-229, 2014-Ohio-3381, ¶ 24. "These statutes, however, 'limit the parties who can petition the court for visitation and limit the application of the statutes to cases where there is a specified predicate event or condition.'" *In re J.T.S.*, 12th Dist. Preble No. CA2014-09-009, 2015-Ohio-364, ¶ 25, quoting *Bauman v. Faught*, 12th Dist. Clermont Nos. CA2006-11-101 and CA2006-11-102, 2008-Ohio-166, ¶ 16. While various statutes have since been promulgated by the legislature to allow certain nonparents to seek visitation, we find none of these statutes permitting a nonparent to seek visitation apply to appellants, J.A.'s former foster family. *See* R.C. 3109.12 (permitting grandparents and other relatives of a child born to an unwed mother to seek visitation with the child); R.C. 3109.11 (permitting grandparents and other relatives of a minor child to seek visitation with a child when the child's parent has died); R.C. 3107.15(C) (permitting grandparents and other relatives of a

minor to seek visitation of an adopted child).

{¶ 29} Appellants cite R.C. 3109.051(B)(1), which permits grandparents, relatives, or "any other person other than a parent" to seek visitation with a child. However, that statute is limited to cases involving divorce, dissolution of marriage, legal separation, annulment, or a child support proceeding. The present action is a motion for legal custody, and therefore R.C. 3109.051(B)(1) does not apply. Accordingly, because there is no applicable statute that would permit appellants to receive visitation, they do not have standing to request visitation in these legal custody proceedings. *See In re J.T.S* at ¶ 25.

{¶ 30} Furthermore, even if appellants had standing to request visitation, a juvenile court has broad discretion in deciding visitation issues, and its decision will not be reversed absent an abuse of discretion. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 18. The court's primary consideration should always be the best interest of the child. *Shafor v. Shafor*, 12th Dist. Warren No. CA2008-01-015, 2009-Ohio-191, ¶ 9. While we reiterate that appellants have shown tremendous care and affection for J.A. and provided her with a safe and loving home environment, we find no abuse of discretion in the court's determination that a visitation order would not be in the best interest of the child. Aunt has shown that she can provide and care for J.A. and the decision to award legal custody to Aunt was supported by the evidence. Based on prior interactions, there would likely be continued tension between appellants and Aunt. An ongoing visitation order would interfere with Aunt's ability to develop a deeper bond with J.A. and establish normalcy in the home. It is in J.A.'s best interest to have this matter resolved so that she may have stability and certainty in her life. Accordingly, appellants' second assignment of error is overruled.

{¶ 31} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.