[Cite as *In re I.C.*, 2017-Ohio-5851.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


IN THE MATTER OF: :

    I.C. : CASE NO. CA2016-11-019

     : O P I N I O N
                                                  7/17/2017

     :

     :


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 12 AD 0596


Kornman Law Office, LLC, Sharon A. Kornman, 731 S. South Street, P.O. Box 1041, Wilmington, Ohio 45177, for appellee, P.L.E.

Mark J. Pitstick, 224 North Fayette Street, Washington C.H., Ohio 43160, for appellant, C.D.


**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, C.D. ("Mother"), appeals the decision of the Fayette County Court of Common Pleas, Juvenile Division, denying her motion to modify visitation and her motion to reinstitute supervised visitation with her son, I.C. For the reasons set forth below, we affirm the decision of the juvenile court.

{¶ 2} I.C. was born on December 5, 2003, to Mother and S.C. ("Father"). Father was killed in 2003 while serving in the United States Armed Forces. In August 2012, P.L.E., the

child's paternal grandmother ("Paternal Grandmother"), filed a complaint for custody of I.C., alleging that Mother was unfit to be the custodial parent due to Mother's continued drug use and exposure of the child to drug activity in the home. The parties reached an agreement, and on December 19, 2012, the juvenile court issued an Agreed Entry wherein Paternal Grandmother was designated I.C.'s sole legal custodian. Mother was given supervised parenting time with I.C. at the Fayette County Visitation and Exchange Center ("Visitation Center") for one hour every week or for two hours every other week, depending on availability. The December 19, 2012 Agreed Entry provided that Mother "shall comply with all requirements of the [Visitation] Center" and that if "Mother ha[s] parenting time terminated for failure to comply with the Center's rules and requirements, she must petition the Court to restart parenting time."

{¶ 3} The parties abided by the terms of the Agreed Entry for a period of time, with Mother exercising her visitation rights with I.C. at the Visitation Center. On December 23, 2015, Mother filed a motion to modify visitation, seeking to have visitation moved from the Visitation Center to the child's maternal grandmother's home in Washington Courthouse, Ohio. Mother also sought to modify the visitation schedule to that of "Option One" of the Fayette County Companionship Guidelines for NonResidential Parents so that she could have parenting time on holidays and alternating weekends.

{¶ 4} In March 2016, while Mother's motion to modify visitation was pending, the Visitation Center stopped Mother's visitation with I.C. due to rule violations. Mother had given I.C. the phone number of an extended relative and asked I.C. to contact the relative in contravention of the Center's rules. On March 18, 2016, in response to the termination of visitation, Mother filed a motion asking that visitation be reinstated pursuant to the terms in the Agreed Entry.

{¶ 5} On March 22, 2016, the trial court sua sponte appointed a guardian ad litem to

the case. Thereafter, numerous pretrial conferences were held on Mother's pending motions to modify visitation and to reinstate supervised visitation. On June 2, 2016, the juvenile court issued a contingent order stating that if Mother provided a report from the Fayette Recovery Center regarding her sobriety, "the Fayette Recovery report does not contradict resumed visitation, and * * * [M]other has started her regimen of injections to maintain sobriety and has not tested positive for any prohibited substance, alternating weeks visitation with the child at the visitation center may resume after June 14, 2016 with the [M]other and child and a supervisor only." Mother did not provide this report and her visitation did not resume.

{¶ 6} On July 12, 2016, the guardian ad litem filed a report recommending that Mother not be given visitation with I.C. at this time. Thereafter, on August 30, 2016, Mother's motion to modify visitation and her motion to reinstate supervised visitation came before the court for a hearing. Mother was the only witness who testified at the hearing.

{¶ 7} Mother explained that she regularly used heroin from 2010 to March 2016, with her longest period of sobriety being about a month. She testified that in addition to I.C., she has four other children. These children are in the custody of her mother as she and the children's father were unable to care for them. According to Mother, she is no longer in a relationship with the children's father, who she acknowledged also abused drugs.

{¶ 8} From April 2015 to February 2016, Mother testified she either lived on the streets or was staying "place to place." During this time Mother was not employed. In order to obtain money for heroin Mother would steal. She testified that she has been arrested and convicted of petty theft.

{¶ 9} Mother claimed the last time she used heroin was in March 2016, when her visits with I.C. terminated. She stated that since then she has stopped using because she wants to get her life back together. She lives with her sister in Bloomingburg, Fayette County, Ohio. In June 2016, Mother began receiving Vivitrol injections for her dependency

and she started counseling at the Fayette Recovery Center. According to Mother she had attended 17 sessions consisting of group meetings and one-on-one meetings. She also received at least two random drug screenings, including one in July 2016, and both screenings tested negative for drugs of abuse.

{¶ 10} Mother admitted that she was not truthful when speaking to the guardian ad litem about her sobriety. Although Mother told the guardian ad litem she had been sober since February 2016, she had relapsed in March 2016. She also admitted that if her use of heroin in March 2016 had not required her to be hospitalized, no one would have known she was using again.

{¶ 11} Mother testified she and I.C. have a "good relationship" and that he was excited to see her when she visited him at the Visitation Center. She testified that they would play games together and talk about his friends, his siblings, and his schooling. Mother admitted that she would visit with I.C. at the Visitation Center after using heroin, and that she did not give consideration to the effect her drug use had on I.C. when she visited him while under the influence. Mother knew she was being selfish, but stated she did not want to miss out on her visits or cause I.C. to think that she did not want to be with him. Mother acknowledged that I.C. knows she is a drug user. She explained that her drug use around I.C. was what caused her to lose custody of I.C. in 2012.

{¶ 12} Mother stated that her visitations with I.C. at the Visitation Center were terminated in March 2016, because of rule violations. Mother admitted that she gave I.C. the phone number for a sick uncle who was hospitalized in Texas. Mother explained that the uncle was dying and wished to speak to I.C. Mother stated she thought she was only breaking Paternal Grandmother's rules when she gave I.C. the phone number and did not realize her actions violated the Visitation Center's rule against exchanging items with the child without receiving prior approval from the Center. Mother also admitted that the

Visitation Center's rules were violated when maternal grandmother recorded I.C. on her cell phone during one of Mother's visits with the child.

{¶ 13} The juvenile court continued the matter until October 27, 2016, at which time the court, in the presence of the guardian ad litem, conducted an in camera interview of I.C. Later that day, the court issued a Judgment Entry denying Mother's motion to modify visitation and her motion to reinstate supervised visitation with I.C. The court found, "[b]ased upon the testimony, the interview with the child, the reports submitted by the [g]uardian ad litem and the court's review of the file, * * * it is not in the best interest of the child to re-establish contact between himself and [Mother] at this time."

{¶ 14} Mother appealed the juvenile court's decision, raising two assignments of error. As the assignments of error are related, we will address them together.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED BY TERMINATING ALL OF APPELLANT'S CONTACT WITH HER SON.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ABUSED ITS DISCRETION IN THAT ITS DECISION IS UNCONSCIONABLE AND VIOLATES THE PUBLIC'S SENSE OF RIGHT AND WRONG.

{¶ 19} In her first and second assignments of error Mother argues the juvenile court abused its discretion in "terminating all of her parental rights" with I.C. She contends the court erred by "considering sobriety as the major reason for not reinstating supervised visitation" and further argues that it is in I.C.'s best interest to have contact re-established, especially as there was "no evidence presented that supervised visitation with a heroin addicted mother had any direct adverse impact on [the child]."

{¶ 20} A juvenile court has broad discretion in deciding matters regarding the visitation rights of a nonresidential parent. *Otten v. Tuttle*, 12th Dist. Clermont No. CA2008-05-053,

- 5 -

2009-Ohio-3158, ¶ 13. A juvenile court's decision is subject to reversal only where there is abuse of discretion. *Id.*; *Shafor v. Shafor*, 12th Dist. Warren No. CA2008-01-015, 2009-Ohio-191, ¶ 7. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 21} "While a change in circumstances is required where there is a change in custody arrangements, any changes to visitation, or parenting time, are not subject to the same requirement." *Shafor* at ¶ 8, citing *Braatz v. Braatz*, 85 Ohio St.3d 40, 44-45 (1999). R.C. 3109.051 governs matters of parenting time and visitation, and a court must consider the enumerated factors in R.C. 3109.051(D), as well as any other factor in the child's best interest, when ordering a modification of parenting time or visitation. *Id.*, citing *Braatz* at 45.[1] "While it is always preferable for the trial court to mention R.C. 3109.051 and its factors, the court need not specifically refer to the statute." *Id.*, citing *Kager v. Kager*, 5th Dist. Stark No. 2005CA00208, 2006-Ohio-2427, ¶ 10. It is sufficient that the record and the court's findings indicate that the statute was considered by the court in rendering its decision. *Id.*

{¶ 22} To further a child's best interest, the juvenile court has the discretion to limit or restrict visitation rights. *Id.* at ¶ 9, citing *Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-

---

1. The factors that a court should consider pursuant to R.C. 3109.051(D) include the following: (1) the child's interaction and interrelationships with the child's parents, siblings, and other relatives; (2) the geographical locations of the parents and guardians; (3) the child and parents' available time, including the parents' employment schedule and the child's school schedule; (4) the age of the child; (5) the child's adjustment to home, school, and community; (6) the wishes and concerns of the child; (7) the health and safety of the child; (8) the amount of time that will be available for the child to spend with siblings; (9) the mental and physical health of the parties; (10) the parents' and guardians' willingness to facilitate parenting time and reschedule missed visitation; (11) whether a parent has been convicted of abuse or neglect or there is reason to believe that the parent has acted in a manner resulting in a child being an abused or neglected child; (12) whether a nonparent requesting visitation has been convicted of an offense involving the neglect or abuse of a child or there is reason to believe the nonparent has acted in a manner resulting in a child being an abused or neglected child; (13) whether the residential parent has denied the other parent's right to parenting time; (14) whether a parent is establishing a residence outside the state; (15) in relation to requested companionship or visitation by a nonparent, the wishes and concerns of the child's parents, as expressed by them to the court; and (16) any other factor in the best interest of the child.

Ohio-1156 (7th Dist.) at ¶ 18. "'This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child.'" *Anderson* at ¶ 18, quoting *Jannetti v. Nichol*, 7th Dist. Mahoning No. 97-CA-239, 2000 Ohio App. LEXIS 2116, * 8 (May 12, 2000).

{¶ 23} Having thoroughly reviewed the record in the present case, we find no error in the juvenile court's decision to deny Mother's motion to modify visitation and her motion to reinstate supervised visitation. The juvenile court took into account several relevant factors in determining that it was in I.C.'s best interest not to have visitation with Mother. The court considered evidence demonstrating that Mother had abused heroin since 2010, that she did not have custody of I.C.'s four siblings as a result of her addiction, that she lived on the streets "on and off" up until February 2016, that she stole to support her addiction, and that she used heroin and was under the influence when visiting I.C. at the Visitation Center. Although Mother disputes that her heroin use had "any direct adverse impact" on I.C., the guardian ad litem's report indicates otherwise. I.C. recalled and described the drug raid that caused him to be placed in Paternal Grandmother's custody, stated he knew Mother had bought and sold drugs, and he expressed fear over his Mother's choices.

{¶ 24} I.C., who was 12 years old at the time Mother's motions were heard, also made his wishes known with respect to visitation with Mother.[2] I.C. was interviewed by the court in camera and he spoke with the guardian ad litem. I.C. expressed that he does not want to visit with Mother. Although Mother believes she and I.C. have a "good relationship," the guardian ad litem reported that I.C. has a "disturbed history" with his maternal family,

---

2. Mother suggests that I.C. was "coached" into stating he does not wish to have visitation with her. There is nothing in the record to support this contention. Moreover, the record reveals that I.C. was 12 years old at the time he was interviewed by the guardian ad litem and the juvenile court. I.C. was certainly of an age to articulate his concerns and desires with respect to visitation with Mother.

including Mother, and does not appear to be bonded with his siblings. Since Mother filed her motions to modify visitation and to reinstate supervised visitation, I.C.'s behavior and progress in school have regressed.

{¶ 25} Additionally, Mother's motion to modify visitation and her motion to reinstate supervised visitation were filed in December 2015 and March 2016, respectively. At the time Mother filed her motions, she was still using heroin and had not begun treatment to address her dependency issues. Mother began taking the Vivitrol shot and attending counseling in June 2016, only a few months before her motions were heard by the court. While Mother's recent sobriety and her actions in undergoing treatment and counseling are commendable, we cannot say that the juvenile court abused its discretion in determining it was not in I.C.'s best interests to reestablish visitation with Mother "at this time." The juvenile court's decision is supported by the record and is not arbitrary, unreasonable, or unconscionable.

{¶ 26} In upholding the denial of Mother's motions, we reject Mother's contention that the juvenile court "decided to terminate all of her parental rights" with I.C. Paternal Grandmother has *legal custody* of I.C. Unlike permanent custody, the grant of legal custody does not terminate the parent-child relationship. *In re C.L.H.*, 12th Dist. Butler No. CA2016-11-217, 2017-Ohio-2925, ¶ 20. "Legal custody vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact." *Id.*, citing *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7. Mother remains able to petition the court for visitation with I.C. or for change of custody at a later date.

{¶ 27} Accordingly, for the reasons set forth above, we find no merit to Mother's arguments and hereby overrule her first and second assignments of error.

{¶ 28} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.